## McQUAY–NORRIS MFG. CO. v. NATIONAL LABOR RELATIONS BOARD.

### No. 7269.

Circuit Court of Appeals, Seventh Circuit.

Dec. 23, 1940.

Barnes, Hickam, Pantzer & Boyd and Paul Y. Davis, all of Indianapolis, Ind. (Kurt F. Pantzer, of Indianapolis, Ind., of counsel), for petitioner.

Gerhard P. Van Arkel, of Washington, D. C., for respondent.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This case is before us on petition to review and set aside an order issued by the National Labor Relations Board (hereinafter called the "Board"), under Section 10(c) of the National Labor Relations Act (hereinafter called the "Act") (29 U.S.C.A. § 151, et seq.). In its answer to the petition, the Board has requested enforcement of its order. The charge was filed April 21, 1938, by Local 226 of the United Automobile Workers of America (hereinafter called "Local 226") upon which complaint issued February 11, 1939. Petitioner, by answer, denied the charge and a hearing was held from March 9 to 12, 1939. Jurisdiction is not in dispute, and so far as here material, the complaint, in conformity with the charge, alleged in substance that petitioner, on March 21, August 18 and 19, 1938, and at all times thereafter, refused to bargain collectively with Local 226 as the exclusive representative of petitioner's employees in an appropriate unit, and that by reason of such refusal, petitioner had engaged, and was engaging in unfair labor practices within the meaning of Section 8(1) and (5), and Section 2(6) and (7) of the Act.

Petitioner excepted to the report made by the Trial Examiner and participated in oral argument before the Board. On March 18, 1940, the Board rendered its decision, setting forth its findings of fact, conclusions of law, and order. We see no occasion to set forth in detail the Board's decision. It is sufficient, for the purpose of the case, to state that it found petitioner guilty of the unfair labor practices as charged. In accordance with its decision, the Board ordered petitioner, (a) upon request, to bargain with Local 226 as the exclusive representative in the appropriate unit; to embody any understanding reached in a signed agreement, and, if requested, to incorporate an exclusive recognition clause in said signed agreement; and (b) to post appropriate notices.

In the beginning, it is important to note that on March 25, 1938, and at all subsequent times, Local 226 was the duly designated representative of a majority of the employees in the appropriate unit for the purpose of collective bargaining. This was found by the Board, and at all times material to this inquiry, has been recognized by petitioner.

The ultimate question for decision is whether petitioner is guilty of an unfair labor practice in refusing to recognize Local 226 as the exclusive representative for the purpose of collective bargaining

in respect to rates of pay, wages, hours and other conditions of employment.

While the issue in dispute appears to be legal rather than factual, it seems pertinent to give a brief resumé of the facts prior to and during the time it is charged petitioner refused to grant exclusive recognition. Petitioner has its principal office and place of business in St. Louis, Missouri, and operates three plants: One in St. Louis, Missouri, one in Connersville, Indiana, and one in Indianapolis, Indiana. Each of these plants has a local union, all affiliated with the United Automobile Workers of America. Local 226 is the union representative of petitioner's plant at Indianapolis, and the controversy in dispute is between petitioner and this Union. All of petitioner's plants are engaged in the manufacture and sale of automotive products. Petitioner, both before and subsequent to the enactment of the Act, jointly bargained with the designated representatives of the employees at its three plants. As early as March 25, 1937, petitioner was requested to recognize the locals representing the employees at the different plants, as the sole collective bargaining agencies of petitioner's employees at such plants. At that time, Arden J. Mummert (director and vice-president of petitioner, who was in charge of all bargaining negotiations) by letter, suggested: "the Company recognize the Union as the sole collective bargaining agency for those employees of the Company who are members of the Union."

On April 12, 1937, an agreement was reached between petitioner and the St. Louis Local which, under the heading "Recognition and Representation" stated: "The Company recognizes the Union as the sole collective bargaining agency for those employees of the Company who are members of the Union. Any employee who is not a member of the Union and wishes to bargain or state a grievance to the Management may continue to do so. Any benefits in wages or working conditions resulting from bargaining by any individual or group will automatically be extended to all employees on similar operations under like conditions, whether they belong to the Union or not."

The Connersville Local also requested an exclusive recognition clause, but after negotiation, on June 4, 1937, approved a written agreement containing the same recognition clause as that incorporated in the agreement with the St. Louis Local.

Local 226, early in 1937, also proposed that the agreement with it contain an exclusive recognition clause. The agreement consummated, however, contained the same clause in this respect as had been included in the agreement with the other locals. Upon the request of Local 226 that petitioner explain the recognition clause, a letter was written by Mummert to the effect that no other labor organization would be recognized or dealt with, and that no outside labor organization would be encouraged. The agreements with all three locals, by their terms, were effective until April 12, 1938. In March, 1938, a joint conference was had between Mummert and representatives of the three locals, with a view of renewing the 1937 agreements with such modifications as might be agreed upon. Again, each of the Locals proposed that petitioner recognize such Locals as the sole bargaining agencies for employees in the appropriate unit in the three plants respectively. Later, many conferences were had concerning the recognition clause, as well as other requests made by the three Locals, but at all times petitioner refused to incorporate into the proposed agreements the requested recognition. Mummert testified at the hearing that at a meeting held on April 12, 1938, "the big issue was still the actual wording of a recognition clause in the 1938 agreement."

Shortly thereafter, charges were filed with the Board against petitioner by Local 226 as related heretofore. Charges were also preferred about the same time by the St. Louis and Connersville Locals. On August 18, 1938, negotiations were renewed, which continued for several days. The main controversy was still the form of the recognition clause. Numerous proposals were made in this connection, both by the Union representatives and petitioner, all of which were rejected.

On August 18, Belflower, a representative of the St. Louis Local, proposed a clause (hereinafter called the "Belflower clause") which, with some modifications, was accepted by the petitioner. This clause is the one around which this controversy largely revolves, and is: "The Company recognizes the Union as the sole collective bargaining agency for those employees who are affiliated with the Union; for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment; and during the term of this contract the Company will

deal with them and no others; provided that any individual employee or group of employees shall have the right at any time to present grievances to the Company." The agreement, containing this clause, was submitted to the respective Locals and approved by the St. Louis and Connersville Locals. Thereupon, the charges theretofore filed with the Board by these Locals, were withdrawn. There is some dispute as to whether the agreement was approved by Local 226. We think it is rather clear, however, that such approval as was given by this Local, insofar as it concerned recognition, was conditioned upon the decision of the Board upon the charge then pending. On October 14, 1938, and January 12, 1939, Local 226, in conference between its representatives and petitioner, again insisted that it was entitled to an exclusive recognition clause, which it was unable to obtain.

■ Petitioner argues, (1) that the Belflower clause is not susceptible of the conclusion that recognition required by 9 (a) was denied, and (2) that irrespective of the construction given this clause that there was, as a matter of fact, exclusive recognition. We are of the opinion that petitioner's position is clearly inconsistent with the statutory command that " * * * a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining * * *." This is so whether the Belflower clause be considered independently or in connection with other facts and circumstances. There is no escape from the conclusion that the words "for those employees who are affiliated with the Union" place a limitation upon the recognition granted, which can not be reconciled with the plain language of the Statute.

■ If there be any doubt in this respect, however, it is dispelled by the controversy concerning recognition which was paramount at the numerous conferences had between petitioner and the Locals, including Local 226. In the first place, the recognition required by 9(a) is not a bargaining matter as petitioner sought to make it. When it was disclosed to petitioner that Local 226 represented a majority of the employees in the appropriate unit, (this was at no time questioned by petitioner) the obligation was then fixed upon it to recognize the Local as the sole and exclusive bargaining agent, not only for the members of the Union, but for all employees. In place of complying with this statutory requirement, petitioner made it the subject of a long and extended bargaining process. Subsequent to the time when demand for recognition was made, petitioner, at all times, has been in default of its statutory obligation. Neither can the consequences of its refusal to grant complete recognition be dissipated by the fact—if it be a fact—that it bargained with the Union on all other matters in dispute. In our view of the situation, there could be no genuine bargaining as contemplated by the Statute until complete recognition had been granted as the Act requires. Notwithstanding the fact that it agreed not to bargain with any other group or individual, its bargaining with Local 226, while limiting its recognition solely to members of the Union, made such bargaining abortive and of little, if any, effect.

■ One member of the Board dissented, holding to the view that the complaint should be dismissed. We think a fair interpretation of his dissent is that notwithstanding petitioner's limited recognition, it did, as a matter of fact, bargain with the Union; that the agreement reached as a result of such bargaining was approved by its members, and that, therefore, the question of recognition had become moot. Such a construction of the Act would result in serious impairment of the right granted employees to organize and bargain through the agency designated by a majority of the members of the appropriate unit. It would confer upon the employer the option of bargaining concerning a matter guaranteed the employee as of right, and which, as we have said, is not a bargaining matter. Nor do we think it is material, under the circumstances of this case, whether the limited recognition granted by petitioner was, or was not, approved by members of Local 226. If so, it could mean nothing more than that the Union, after engaging in a controversy for more than a year regarding its right to complete recognition, consented to accept the most it could obtain of a right to which it was entitled for the asking. A consent given under such circumstances can not be utilized by petitioner to relieve it of its statutory duty to grant complete recognition. In this connection, it seems pertinent to point out that when the Union was denied recognition in defiance of the Statutory mandate, it placed its reliance upon the Board to require peti-

tioner to concede that about which there was no room for controversy. That the Union pursued this lawful and peaceful method is to its credit.

■ Neither is there any merit in petitioner's argument that it refused exclusive recognition for fear that such a clause would bring about reprisals by rival unions. It is pointed out that many of its customers, as well as a few of its employees, were members of a rival union, and that complete recognition of Local 226 would incur their disfavor and thus adversely affect petitioner's business. We are convinced from a reading of the testimony that Mummert's reasoning in this respect was in good faith, but even so, such a position can not afford petitioner any justification for its position. The Statutory requirement under discussion permits no immunity because of undue hardship or economic pressure imposed upon the employer. It leaves no room for the appeasement of hostile interests by conceding to a Union, properly designated as the bargaining agent, less than the Act requires.

The argument advanced that petitioner was not required to grant complete recognition because the Belflower clause failed to follow the precise language of the Statute, or set out the exact unit found appropriate by the Board, must also fall by the wayside. In the first place, petitioner at no time raised any question but that the Union was the properly designated bargaining agent, and in the second place, when thus apprised and requested, had no alternative but to grant complete recognition, and this, irrespective of the language contained in the clause finally presented by the Union in an effort to compromise a situation for which petitioner alone was responsible.

We therefore conclude that petitioner refused to grant recognition as the Act commands, and that its refusal constitutes an unfair labor practice as charged in the complaint and as found by the Board.

■ We are still confronted with the affirmative portion of the Board's order which requires petitioner "to embody any understanding reached in a signed agreement, and, if requested, to incorporate an exclusive recognition clause in said signed agreement." Petitioner contends that the Act does not require that recognition be reduced to writing, and further, that there is no obligation on the part of an employer to reduce to writing agreements reached as a result of collective bargaining. A number of decisions[1] of this court are cited in support of this position. We are of the opinion that these decisions are not controlling for the reason that the issue here is different from that decided in those cases. Here, the undisputed fact is that petitioner never, at any time, refused a written recognition clause. In fact, it proposed such a clause in writing, consented to the Belflower clause, and incorporated it in a written agreement. What might have been the obligation of petitioner with reference to a written recognition clause, had the question been raised at an opportune time, need not be decided. It is sufficient to decide that, having proposed and agreed to a written recognition clause which failed to comply with the Act, it can not now be heard to complain when required to grant written recognition in conformity with the Act.

We are also of the opinion that the same reasoning applies to petitioner's objection to a signed contract incorporating any further agreement reached by the bargaining process. There exists a written contract entered into by petitioner and Local 226, the provisions of which are not here material. It is sufficient to state that, in addition to the limited recognition clause, the contract is a lengthy one and purports to constitute a working agreement between petitioner and its employees. When this contract was signed by petitioner, no question was raised as to its right to refuse to sign. Thus, no question is raised as to the requirement of the Act in this respect. Petitioner has conceded a written contract and now is in no position to contend to the contrary. Such a situation is clearly distinguishable from those cases in which we have held that a written agreement is not required by the terms of the Act.

We therefore are of the opinion that the Board's order is proper and its request for enforcement is allowed.

[1] Inland Steel Co. v. National Labor Relations Board, 7 Cir., 109 F.2d 9, 22; Fort Wayne Corrugated P. Co. v. National Labor Relations Board, 7 Cir., 111 F.2d 869; Stewart Die Casting Corp. v. National Labor Relations Board, 7 Cir., 114 F.2d 849.