936 S.W.2d 699 (1996)
The CITY OF EULESS, Texas, and the city of Grapevine, Texas, Appellants
v.
DALLAS/FORT WORTH INTERNATIONAL AIRPORT BOARD, a joint board of the city of Dallas, Texas and the city of Fort Worth, Texas, American Airlines, Inc., Delta Air Lines, Inc., United Parcel Service Co., Inc., and Attorney General of Texas, Appellees
No. 05-95-00479-CV.
Court of Appeals of Texas, Dallas.
November 20, 1996.
*700 Robert H. Power, Christopher J. Caso, Power & Deatherage, Irving, Clarence A. Guittard, Guittard, Hyden & Guittard, P.C., Dallas, Don Rorschach, City Attorney, Irving, Paul F. Wieneskie, Cribbs & McFarland, Arlington, for appellants.
Mike Joplin, David J. LaBrec, P. Michael Jung, Strasburger & Price, L.L.P., Dallas, Kevin E. Cox, Fort Worth, Mike McKool, Jr., Eric W. Buether, Richard A. Lempert, McKool, Smith, P.C., Peter Winn, Assistant Attorney General, Dallas, for appellees.
Before MALONEY, MORRIS, and HANKINSON, JJ.

OPINION
HANKINSON, Justice.
This case presents an appeal in a declaratory judgment action. On remand from the Texas Supreme Court to consider the validity, constitutionality, and applicability of 1993 amendments to the Texas Municipal Airports Act ("the Act"),[1] the trial court declared that the amended Act preempts certain zoning ordinances enacted by the suburban Cities of Irving,[2] Euless, and Grapevine ("the Cities") and is constitutional.
In seven points of error, the Cities challenge the constitutionality of the amended Act. In one point of error, the Cities challenge *701 the trial court's interpretation of one provision in the amended Act that withdraws their eminent domain power over roadways located within the geographic boundaries of the Dallas/Fort Worth International Airport ("D/FW Airport"). Because City of Irving v. Dallas/Fort Worth International Airport Board, 894 S.W.2d 456 (Tex.App.Fort Worth 1995, writ denied), moots the Cities' constitutional challenge, we dismiss for want of a continuing justiciable controversy the Cities' cause to the extent that it seeks declaratory relief as to the constitutional issues. We affirm the trial court's judgment in all other respects because the trial court correctly interpreted the amended Act.

BACKGROUND
In 1968, the Cities of Dallas and Fort Worth established a joint airport board ("the Board") pursuant to the Act. The Board operates the D/FW Airport. The Cities, which annexed the territory where D/FW Airport was to be located, did not attempt through zoning to interfere with the establishment or initial operation of D/FW Airport.
In 1989, the Board announced plans to expand D/FW Airport by constructing two new runways and other airport facilities. The proposed expansion's purpose was to improve the safety and efficiency of D/FW Airport by accommodating increased aviation demand. By this time, D/FW Airport had become the second busiest airport in the world. The Cities opposed the expansion, and in late 1989 and early 1990, enacted zoning ordinances purporting to regulate D/FW Airport's expansion and operation.
In April 1990, the Board sought a declaratory judgment that the Act and various federal statutes and regulations preempted the zoning ordinances. Three primary users of D/FW Airport, American Airlines, Delta Air Lines, and United Parcel Service, intervened as plaintiffs. The Cities counterclaimed for a declaration that the zoning ordinances were not preempted, or alternatively, that the Act was unconstitutional under the "home rule" amendment to the Texas Constitution. See TEX. CONST. art. XI, § 5.
The trial court rendered a declaratory judgment that neither the Act nor the federal statutes and regulations preempted the zoning ordinances. The trial court dismissed without prejudice as moot the Cities' conditional declaratory judgment action concerning the Act's constitutionality. This Court affirmed the declaratory judgment on the preemption issues. See Dallas/Fort Worth Int'l Airport Bd. v. City of Irving, 854 S.W.2d 161 (Tex.App.Dallas) ("DFW I"), vacated without reference to merits, 868 S.W.2d 750 (Tex.1993).
In 1993, while DFW I was pending before the Texas Supreme Court, the Texas Legislature passed Senate Bill 348, which amended the Act and gave joint airport boards sole authority to exercise eminent domain power within the airport's geographic boundaries as those boundaries may be expanded:
If the constituent public agencies of a joint board are populous home-rule municipalities, these powers are exclusively the powers of the board regardless of whether all or part of the airport, air navigation facility, or airport hazard area is located within or outside the territorial limits of any of the constituent public agencies, and another municipality, county, or other political subdivision shall not enact or enforce a zoning ordinance, subdivision regulation, construction code, or any other ordinance purporting to regulate the use or development of property applicable within the geographic boundaries of the airport as it may be expanded.
Act of May 6, 1993, 73rd Leg., R.S., ch. 94, § 1, 1993 Tex. Gen. Laws 181, 182, amended by Act of May 23, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Gen. Laws 1025, 1052-53 (current version at TEX. TRANSP.CODE ANN. § 22.074(d) (Vernon Pamph.1997)). Following the passage of Senate Bill 348, the Texas Supreme Court vacated this Court's judgment in DFW I and remanded the case to the trial court to consider the validity, constitutionality, and applicability of Senate Bill 348. Dallas/Fort Worth Int'l Airport Bd. v. City of Irving, 868 S.W.2d 750 (Tex.1993) ("DFW II"). The Board announced that it would begin constructing the new runways after the legislature passed Senate Bill 348.
*702 On remand, after appellees filed a motion for summary judgment, the trial court rendered a final declaratory judgment that the Act, as amended by Senate Bill 348, preempts the Cities' zoning ordinances with unmistakable clarity and denied the Cities' constitutional challenge to Senate Bill 348. The trial court then denied all relief not specifically granted or contemporaneously severed into another action and dismissed for want of a present justiciable controversy certain claims concerning the proper construction of Senate Bill 348. Finally, the trial court severed issues related to the recovery of attorney's fees and consolidated them with another action pending in the trial court. This appeal followed.
While the case was pending on remand in the Dallas County trial court, the 96th District Court of Tarrant County rendered a declaratory judgment, which upheld the constitutionality of Senate Bill 348, in companion litigation among the parties. The constitutional issues adjudicated in the Tarrant County action encompassed all of the constitutional challenges raised by the Cities in the Dallas County trial court. After the trial court granted summary judgment in the Dallas County case, the Fort Worth Court of Appeals affirmed the Tarrant County trial court's summary judgment. City of Irving v. Dallas/Fort Worth Int'l Airport Bd., 894 S.W.2d 456 (Tex.App.Fort Worth 1995, writ denied) ("DFW III"). While this appeal was pending, the Texas Supreme Court denied the Cities' application for writ of error and overruled the Cities' motion for rehearing. This Court then directed the parties to file briefs concerning the impact of the supreme court's denial of the application for writ of error in DFW III on this appeal.

DISCUSSION
This appeal involves three general issues. The Cities question the constitutionality of Senate Bill 348 ("the constitutional issues") and the interpretation of one provision of Senate Bill 348 ("the statutory construction issue"). Appellees, in two conditional cross-points of error, question whether federal law and the pre-Senate Bill 348 version of the Act preempt the Cities' zoning ordinances ("the preemption issues"). We review these questions of law de novo. See In re Humphreys, 880 S.W.2d 402, 404 (Tex.), cert. denied, ___ U.S. ___, 115 S.Ct. 427, 130 L.Ed.2d 340 (1994).
We first address the constitutional issues. In points of error one through six and eight, the Cities complain that the trial court erroneously denied their challenge to Senate Bill 348's constitutionality. They contend that Senate Bill 348 is unconstitutional because it: (1) violates article II, section 56 of the Texas Constitution because it is a special or local law; (2) violates article XI, section 5 of the Texas Constitution by depriving the Cities of their home rule authority and transferring self-government powers from one home rule city to another home rule city; (3) violates article III, sections 63(1) and 64(A) of the Texas Constitution by transferring governmental authority from one political subdivision of the State to another political subdivision; (4) violates the federal Voting Rights Act because it has not been precleared as required by section 5 of that act, see 42 U.S.C.A. § 1973c (West 1994); and (5) violates article I, section 16 of the Texas Constitution by impairing contracts to which the Cities are parties. In DFW III, the Fort Worth Court of Appeals addressed each constitutional issue the Cities raise here and concluded that Senate Bill 348 does not violate any of the provisions the Cities cite. See City of Irving, 894 S.W.2d at 463-70.
Even though the Texas Supreme Court denied their application for writ of error and overruled their motion for rehearing in DFW III, the Cities contend that this Court can rule on the constitutional issues in this case. Appellees disagree, contending that DFW III destroys the controversy concerning the constitutional issues. We agree with appellees.
The purpose of the Uniform Declaratory Judgments Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." TEX.CIV.PRAC. & REM.CODE ANN. § 37.002(b) (Vernon 1986). The Uniform Declaratory Judgments Act has been interpreted to be a "procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a *703 court's power, permitting the rendition of advisory opinions." Texas Ass'n of Business v. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993) (citing Firemen's Ins. Co. v. Burch, 442 S.W.2d 331, 333 (Tex.1969); United Serv. Life Ins. Co. v. Delaney, 396 S.W.2d 855, 863 (Tex.1965); California Prods., Inc. v. Puretex Lemon Juice, Inc., 160 Tex. 586, 334 S.W.2d 780, 781 (1960)). A declaratory judgment action cannot be maintained absent a live controversy among the parties. Empire Life Ins. Co. v. Moody, 584 S.W.2d 855, 858 (Tex.1979); California Prods., Inc., 334 S.W.2d at 780; see Texas Ass'n of Business, 852 S.W.2d at 444. Without an actual controversy among the parties, this Court lacks subject-matter jurisdiction to decide the issues. See Texas Ass'n of Business, 852 S.W.2d at 444. Because DFW III disposes of the actual controversy concerning the constitutional issues in this case, this Court lacks jurisdiction to review the Cities' constitutional challenge to Senate Bill 348. Other jurisdictions have reached the same conclusion. See WJW-TV, Inc. v. City of Cleveland, 878 F.2d 906, 908 (6th Cir.1989) (dismissing appeal from final declaratory judgment with instructions to vacate lower court's judgment and dismiss complaint; no live controversy existed because, while appeal was pending, Ohio Supreme Court decided case arising from same facts that raised same determinative issues presented in pending appeal), cert. denied, 493 U.S. 819, 110 S.Ct. 74, 107 L.Ed.2d 41 (1989); Connecticut Gen. Life Ins. Co. v. Pierce, 110 F.2d 27, 28 (3rd Cir. 1938) (dismissing appeal from final declaratory judgment because it presented issues identical to those raised in second action decided while appeal was pending); see also Colby v. Colby, 120 So.2d 797, 800-01 (Fla. Dist.Ct.App.1960); Shearer v. Backer, 207 Ky. 455, 269 S.W. 543, 545 (1925) (both affirming trial court's decision to dismiss pending declaratory judgment action because no live controversy existedprior litigation conclusively settled issues raised in declaratory judgment action). Accordingly, we dismiss as moot points of error one through six and eight pertaining to the Cities' constitutional issues and dismiss the Cities' cause to the extent that it seeks declaratory relief as to those issues. See City of Garland v. Louton, 691 S.W.2d 603, 605 (Tex.1985) (holding appellate court must dismiss cause when it becomes moot, rather than simply dismiss appeal).
We next focus on the statutory construction issue. The Cities contend in point of error seven that Senate Bill 348 does not preempt their authority to exercise exclusive eminent domain power over their streets and roads located within the airport's geographic boundaries. Specifically, the Cities argue that Senate Bill 348 fails to grant the authority to regulate these roadways to the Board because it does not withdraw their exclusive dominion with unmistakable clarity.[3] We disagree.
The legislature has generally delegated to home rule cities "exclusive control over and under the public highways, streets, and alleys of the municipality." TEX.TRANSP. CODE ANN. § 311.001(a)(Vernon Pamph. 1997). As long as its intention appears with "unmistakable clarity," the legislature may, either expressly or impliedly, limit this power in later legislation. Lower Colo. River Auth. v. City of San Marcos, 523 S.W.2d 641, 644-45 (Tex.1975); City of Lubbock v. South Plains Elec. Coop., Inc., 593 S.W.2d 138, 142 (Tex.Civ.App.Amarillo 1979, writ ref'd n.r.e.). A court may imply a limitation if the statute's provisions "are clear and compelling to that end." Lower Colo. River Auth., 523 S.W.2d at 645.
With its passage of Senate Bill 348, the legislature delegated the power of eminent domain with unmistakable clarity to the Board. See City of Irving, 894 S.W.2d at 470. That power includes the right to "realign, alter, acquire, abandon, or close portions of roads, streets, boulevards, avenues, and alleyways ... if the portions ... are within the geographic boundaries of the airport at *704 the time of, or following, the realignment, alteration, acquisition, abandonment, or closing." TEX.TRANSP.CODE ANN. § 22.074(c) (Vernon Pamph.1997); see City of Irving, 894 S.W.2d at 470. However, the Cities argue that although Senate Bill 348 purports to give the Board eminent domain power over roadways within the airport's geographic boundaries, this limitation is ineffective because the legislature did not withdraw their power with "unmistakable clarity." In support, they cite the subsection of Senate Bill 348 that immediately follows the eminent domain language quoted above. This subsection currently provides: "[A]nother local government or other political subdivision shall not enact or enforce a zoning ordinance, subdivision regulation, construction code, or any other ordinance purporting to regulate the use or development of property applicable within the geographic boundaries of the airport as it may be expanded." TEX.TRANSP. CODE ANN. § 22.074(d) (Vernon Pamph.1997). The Cities argue that this language does not "unmistakably" withdraw their eminent domain power because it does not specifically mention ordinances relating to roadways or home rule cities. We disagree with both arguments.
The legislature's failure to mention roadways does not make Senate Bill 348's meaning unclear. Senate Bill 348 first expressly grants the Board eminent domain power over the roads within the airport's geographic boundaries. It then expressly prohibits local governments from enacting "any other ordinance purporting to regulate the use or development within the geographic boundaries of the airport as it may be expanded." Reading these provisions together, we conclude that the legislature has, with "unmistakable clarity," withdrawn the Cities' eminent domain power over all roads within the airport's geographic boundaries, however they may be expanded, and given that power to the Board.
Nor do we conclude that Senate Bill 348 is unclear simply because it does not specifically mention home rule cities. Senate Bill 348 originally referred to municipalities. Municipality, as defined by the original version of Senate Bill 348, meant "any county, or any incorporated city, village or town of this State." Act of April 21, 1947, 50th Leg., R.S., ch. 114, 1947 Tex. Gen. Laws 183, 184, amended by Act of May 26, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Gen. Laws 1025, 1046 (current version at TEX.TRANSP.CODE ANN. §§ 22.001-.159 (Vernon Pamph.1997)). The current version of Senate Bill 348 substitutes the term "local government," which is defined as "a county or municipality," for the term "municipality." TEX.TRANSP.CODE ANN. §§ 22.001(6), 22.074(d) (Vernon Pamph.1997). A municipality is commonly defined as an organized body, consisting of inhabitants of a designated area, which is a legal entity constituting a subdivision of the State having delegated powers. See, e.g., Welch v. State, 148 S.W.2d 876, 879 (Tex.Civ.App.Dallas 1941, writ ref'd). We hold the definitions of a municipality and a local government, as used in either version of Senate Bill 348, encompass home rule cities. We overrule the Cities' seventh point of error.
Finally, we need not reach the preemption issues raised by appellees' conditional crosspoints of error because we do not sustain any of appellants' points of error. See TEX. R.APP.P. 90(a).
We dismiss the Cities' cause to the extent it seeks declaratory relief as to the constitutional issues. We affirm the trial court's judgment in all other respects.
NOTES
[1] Act of April 21, 1947, 50th Leg., R.S., ch. 114, 1947 Tex. Gen. Laws 183, 183-91, amended by Act of June 8, 1981, 67th Leg., R.S., ch. 300, 1981 Tex. Gen. Laws 851, 851-53, amended by Act of May 6, 1993, 73rd Leg., R.S., ch. 94, § 1, 1993 Tex. Gen. Laws 181, 181, amended by Act of May 23, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Gen. Laws 1025, 1046-57 (current version at TEX.TRANSP.CODE ANN. §§ 22.001-.159 (Vernon Pamph.1997)).
[2] During the pendency of this appeal, the City of Irving and appellees announced that they had settled their differences. On these parties' agreed motion, this Court vacated the district court's judgment, without reference to the merits, insofar as it denied appellees' prayers for declaratory judgment that the pre-Senate Bill 348 version of the Texas Municipal Airports Act and federal statutes and regulations preempted the City of Irving's zoning ordinances. This Court dismissed as moot those prayers for declaratory judgment and dismissed the City of Irving's appeal of this case.
[3] We analyze this issue according to the current codified version of Senate Bill 348. See TEX. TRANSP.CODE ANN. § 22.074 (Vernon Pamph.1997). This codification was not yet effective when the parties completed the appellate briefing in this case. However, because the codification did not substantively alter the relevant portions of the original version of Senate Bill 348, we would reach the same result under either version of the Act.